IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ROBERT J. ABEL                                               PLAINTIFF

v.                  Civil No. 11-2164

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                            DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Robert Abel, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB"), and under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.     **Procedural Background:**

The plaintiff filed his application for DIB on July 1, 2008[1], alleging an onset date of June 1, 2006, due to migraine headaches, gout, uncontrolled hypertension, bipolar disorder, and depression. Tr. 130-132, 135-138, 179, 192-193, 212, 215, 226. His applications were denied initially and on reconsideration. Tr. 86, 89, 98.

An administrative hearing was held on October 5, 2009. Tr. 22-58. Plaintiff was present and represented by counsel. At this time, plaintiff was 44 years of age and possessed a high

---

[1] The ALJ noted that Plaintiff had filed prior applications for Title II and Title XVI benefits alleging a disability onset date of October 8, 2000, the first of which was denied initially on January 5, 2001. Tr. 9, 165. The second application was denied on February 11, 2005. Pursuant to the regulations, the ALJ found no basis in the law to reopen these prior claims and expressly declined to do so. Tr. 9.

school education with some college. Tr. 30, 83. He has past relevant work ("PRW") experience asa mainframe operator. Tr. 16, 43-45, 168-171, 180, 190.

On June 10, 2010, the Administrative Law Judge ("ALJ") determined that Plaintiff's date last insured was June 30, 2006. She then found that Plaintiff's migraine headaches and depression were severe impairments, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 11-13. After partially discrediting plaintiff's subjective complaints, she determined that prior to his date last insured, Plaintiff could perform medium level work involving no transactional interaction with the public. With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform his PRW as a mainframe operator as this did not require the performance of work-related activities precluded by claimant's RFC. Tr. 15-16.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 12, 2011. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 10, 11.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial

evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U. S. 212, 219-220 (2002).

    **A.**    **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.     Discussion:

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

During the relevant time period[2], the evidence reveals that Plaintiff was diagnosed with testicular and lung cancer in 1985. He underwent an orchiectomy and removal of a portion of his lung, but also required chemotherapy. Following chemotherapy, Plaintiff began experiencing severe headaches associated with nausea, vomiting, and visual impairment. As he was also suffering from hypertension, Plaintiff was diagnosed with vascular headaches and tension headaches before finally being diagnosed with migraine headaches. Tr. 244-258, 526-532, 575-602, 742-754, 758-772, 777-840. Between 2001 and 2006, records reveal almost weekly emergency room visits for migraine headaches. Medical records reveal that these headaches were generally associated with a spike in Plaintiff's blood pressure. Initially, Plaintiff was prescribed Imitrex, which was very effective at relieving his pain. However, Imitrex caused an additional spike in Plaintiff's blood pressure, requiring the administration of additional medication to lower his blood pressure and eventually rendering it unsafe. Tr. 749, 752-753, 760, 777, 798. As a result, Plaintiff was given a variety of less effective pain medications including Inderal, Indocin, Ultram, Tramadol, Lorcet, Demerol, and Phenergan. Tr. 282-283, 321, 843-844, 847-848.

Plaintiff also suffered from gout, affecting his feet, toes, and knee. On March 19, 2006, Plaintiff presented in the emergency room at St. Edward's Mercy Medical Center for complaints of gout. Tr. 841-842. His feet exhibited a bluish discoloration at the base of the first toe. He

---

[2]In order to qualify for DIB, a claimant must show that he or she became disabled during the period in which he or she met the DIB requirements. *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001). A claimant who becomes disabled after the expiration of her insured status is not entitled to DIB. *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). Thus, the period of review is from June 1, 2006, the alleged onset date, through June 30, 2006, Plaintiff's last insured date.

AO72A
(Rev. 8/82)

also had some hyperemia on the first metacarpal pharyngeal joint, and mild tenderness to the touch. The doctor diagnosed him with gouty arthritis. Tr. 842.

On November 17, 2006, Plaintiff complained of right knee pain. Tr. 847-848. He also complained of a headache with nausea, vomiting, loose stools, and diarrhea. An examination did reveal some swelling of his right knee with diffuse tenderness to his knee and pain with extension. X-rays of his right knee also revealed large knee joint effusion, but no fracture or dislocation. Tr. 498, 864. Dr. Partic Anderson suspected gout or a soft tissue injury. He diagnosed Plaintiff with a right knee contusion and pain, migraine headache, and vomiting. Dr. Anderson placed him in a knee immobilizer, and referred him to orthopedics. Tr. 498, 864.

The only RFC assessment contained in the record was prepared by a non-examining, consultative doctor. On January 8, 2009, Dr. Alice Davidson completed a physical RFC assessment, evaluating Plaintiff's RFC as of his date last insured. Tr. 378-385. She concluded Plaintiff could perform sedentary work involving no more than two hours of walking and standing and occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Dr. Davidson's assessment indicates that it is based on that fact that Plaintiff had experienced significant blood pressure readings and migraine intervention since 2000. Tr. 385. We note, however, that the ALJ discredited Dr. Davidson's assessment on the grounds that none of his other doctors had commented on his RFC and the fact that Plaintiff had reported running his own stone cutting business, doing some archeological work, and carrying heavy items on two occasions over a four year period. In reviewing Plaintiff's PRW, we note that the ALJ did not find that Plaintiff's archeology or stone cutting work qualified as PRW. In fact, a review of the testimony concerning the work Plaintiff actually performed reveals that Plaintiff's description

6

of the tasks he performed does not support a finding that he was capable of performing medium level work. Plaintiff testified that he had last work approximately one year prior to the hearing, doing archeology work. Tr. 31-32. He described this work more as a hobby, stating that he went out and located sites for archeological digs in search of Native American artifacts. Tr. 32. He also acknowledged that he ran his own business, named Nature's Work, until 2005 or 2006. Tr. 35. Plaintiff made jewelry from Jade and other semi-precious stones. Tr. 36-37. He advertised his business on various websites and sold some of his jewelry in Medisave stores. However, there is no testimony regarding the physical requirements of either of these jobs. Accordingly, we can not say that substantial evidence supports the ALJ's determination that Plaintiff could perform medium level work. Remand is necessary to allow the ALJ to re-evaluate Plaintiff's RFC during the relevant time period. It is strongly recommended that the ALJ obtain an RFC assessment from Plaintiff's treating doctors regarding Plaintiff's RFC prior to the expiration of his date last insured.

### IV.   Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

    DATED this 26th day of April 2012.

                                                               /s/ *J. Marschewski*
                                                               HON. JAMES R. MARSCHEWSKI
                                                               UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)